W. PATRICK BETTERMAN, APPELLANT, V. STATE OF NEBRASKA DEPARTMENT OF MOTOR VEHICLES AND BEVERLY NETH, DIRECTOR, APPELLEES.

728 N.W.2d 570

Filed March 9, 2007. Nos. S-05-638, S-06-823.

Appeals from the District Court for Douglas County: DANIEL BRYAN, JR., and PETER C. BATAILLON, Judges. Affirmed.

W. Patrick Betterman, of Law Offices of W. Patrick Betterman, pro se.

Jon Bruning, Attorney General, and Edward G. Vierk for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## I. NATURE OF CASE

W. Patrick Betterman sought judicial review of an order by the director of the Department of Motor Vehicles (DMV) revoking his driving privileges for 1 year for refusing to submit to chemical testing of his breath for the unlawful presence of alcohol. The district court affirmed the director's decision and a subsequent decision to refuse to vacate such order, and Betterman appeals. We affirm the judgments of the district court.

## II. SCOPE OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act (APA) may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

■ The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.*, 272 Neb. 390, 722 N.W.2d 10 (2006).

## III. FACTS

On September 19, 2004, Lt. Todd Schmaderer of the Omaha Police Department observed a car traveling at a high rate of speed. Schmaderer saw the car pass three vehicles without signaling before changing lanes. He activated the warning lights on his vehicle and pursued the car. When the car stopped at a red light, Schmaderer got out and approached the car. The driver was staring straight ahead and appeared not to notice the lights of the police car behind him or Schmaderer standing next to the driver's car. Schmaderer tapped on the window to get the driver's attention, and the driver rolled down his window.

The driver took out his wallet but had trouble finding his driver's license until Schmaderer pointed it out. Schmaderer identified Betterman by his driver's license. He also asked for Betterman's automobile registration and proof of insurance. Betterman fumbled unsuccessfully through his papers, and again, Schmaderer pointed out the appropriate documents. Schmaderer noted that Betterman's eyes were bloodshot and watery, that his speech was slurred, and that he smelled of alcohol.

After Officer Mark Kiley arrived on the scene, the officers attempted to conduct field sobriety tests, but Betterman refused to participate in any tests. Betterman was placed under arrest and was transported by Kiley to the police station. Schmaderer followed in his police vehicle.

At the police station, Betterman told the officers he was diabetic and requested a drink of water. Water was provided for him. With Schmaderer present, Kiley read to Betterman a postarrest chemical test advisement form. Betterman was unsure whether he wanted to take a chemical test, and he requested to contact an attorney. After speaking to someone on the telephone, Betterman signed the advisement, which indicated his knowledge that he was being asked to submit to a chemical test and that refusal to submit was a separate crime for which he could be charged. He then verbally agreed to take the test.

In the room where Breathalyzer tests were given, Betterman asked numerous times for another drink of water. His requests were denied because the police department's protocol was to observe a person for 15 minutes before conducting the breath test, during which time, the person was not allowed to put anything in his or her mouth.

Judy Kyler, a crime laboratory technician, instructed Betterman on how to perform the test. Betterman did not follow her instructions. According to Schmaderer, Betterman was "yelling the entire time" and was "argumentative [and] attempting to be intimidating." Betterman twice told Kyler he would not take the breath test until he had a drink of water. Kyler then concluded that Betterman was refusing the test.

Schmaderer, Kiley, and Kyler completed a sworn report stating that Betterman had been directed to submit to a chemical test but had refused. The handwritten list of reasons for Betterman's arrest stated: "[R]eckless driving. Driver displayed signs of alcohol intoxication. Refused all SFST and later breath test." The report was received by the DMV on September 23, 2004.

Betterman petitioned the DMV for an administrative license revocation (ALR) hearing, and a hearing was scheduled for October 15, 2004. At the request of the police officers, two continuances were granted, and the hearing date was moved to November 18. Betterman retained a temporary driver's license through the new hearing date.

Schmaderer and Kyler appeared at the ALR hearing, but Kiley was unable to attend. Betterman moved to dismiss because of Kiley's absence; the motion was overruled by the hearing officer. The DMV then requested a continuance so that Kiley could attend. Betterman was asked if he wanted to respond, and Betterman's attorney stated, "No response." The DMV presented its evidence, and the hearing officer then denied the request for a continuance.

After the hearing, the director administratively revoked Betterman's driver's license for 1 year. He petitioned for judicial review. The district court affirmed the director's order, and Betterman appealed.

While his appeal was pending in this court as case No. S-05-638, Betterman was acquitted in county court of the criminal

refusal-to-submit charge. Betterman filed with the DMV motions to vacate the ALR and for a new ALR hearing because of newly discovered evidence that he had been acquitted of the criminal refusal charge.

The director denied Betterman's motions, and he appealed to the district court. Although an appeal was pending in case No. S-05-638, the district court concluded it had jurisdiction over Betterman's appeal. It affirmed the director's refusal to vacate the ALR. Betterman appealed to this court from the district court's order, which appeal was docketed as case No. S-06-823. The two cases have been consolidated.

## IV. ASSIGNMENTS OF ERROR

Betterman asserts, summarized, renumbered, and restated, that the district court erred (1) in finding that Schmaderer's testimony at the ALR hearing could cure the alleged deficiencies in the sworn report, (2) in finding that Betterman had waived his objection regarding the employment status of the hearing officer, (3) in not taking judicial notice that the hearing officer was an employee of the DMV, (4) in failing to either dismiss the proceedings or remand the case to the DMV for a determination of the hearing officer's employment status, (5) in finding that Betterman refused to submit to a chemical test of his breath in accordance with Neb. Rev. Stat. § 60-6,197 (Reissue 2004), (6) in applying the wrong standard of review, (7) in finding that the evidence before the hearing officer established that Kiley's appearance was not mandatory, (8) in finding that no error resulted from the director's denial of Betterman's motion to dismiss, (9) in finding that the director did not abuse her discretion by granting two continuances, (10) in finding that Neb. Rev. Stat. §§ 60-498.01 and 60-498.02 (Reissue 2004) are constitutional, and (11) in affirming the director's order refusing to vacate the ALR on the basis of newly discovered evidence.

## V. ANALYSIS

### 1. Sufficiency of Sworn Report

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *Merrill v. Griswold's, Inc.*, 270 Neb. 458, 703

N.W.2d 893 (2005). Betterman argues that the sworn report submitted at the ALR hearing was deficient in that it did not recite the matters required by § 60-498.01(2) and that, therefore, the director did not acquire jurisdiction or authority to administratively revoke Betterman's driver's license.

In his petition for judicial review, Betterman did not assign as error that the director lacked jurisdiction because of a defective sworn report. Although the court discussed the report in the context of considering the sufficiency of the evidence, it did not consider the jurisdictional question. Nonetheless, lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005).

The district court found that the sworn report lacked the statutorily required recitations, but the court found that the DMV established a prima facie case against Betterman by supplementing the report with testimony by Schmaderer at the hearing. This court has held that in an ALR proceeding, the sworn report of the arresting officer must, at a minimum, contain the information specified in the applicable statute, in order to confer jurisdiction. *Hahn v. Neth*, 270 Neb. 164, 699 N.W.2d 32 (2005). The DMV makes a prima facie case for license revocation once it establishes that the officer provided a sworn report containing the statutorily required recitations. *Id.* If the sworn report does not include information required by statute, the report may not be supplemented by evidence offered at a subsequent hearing. See *id.* The district court thus erred in concluding that a sworn report which allegedly lacked the required recitations could be cured by supplemental testimony by the arresting police officer to establish a prima facie case for the ALR.

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004). There is no factual dispute as to what information was contained in the report. The district court concluded that the explanation on the sworn report for why Betterman was arrested did not state "the reasons for such arrest." See § 60-498.01(2). This court is required to reach an

independent conclusion whether the sworn report provided the required statutory information to confer authority upon the director to revoke Betterman's license.

In *Hahn*, the arrested motorist failed a chemical breath test and the officer filed a sworn report. Following an ALR hearing, the motorist's license was revoked. On appeal, the district court vacated the revocation because the sworn report did not meet the statutory requirements. The officer had not completed those portions of the sworn report form which would have shown that the motorist " 'was requested' " to submit to the required test or " 'the type of test' " to which he submitted. See *Hahn*, 270 Neb. at 171, 699 N.W.2d at 38. The director appealed.

The issue was whether the report was sufficient to confer authority upon the director to revoke the motorist's license. This court found that the report did not fully comply with the statutory requirements. We stated that the arresting officer's sworn report "triggers the administrative revocation process by establishing a prima facie basis for revocation." *Id.* at 169, 699 N.W.2d at 37. We considered when "an omission on a sworn report becomes a jurisdictional defect, as opposed to a technical one." *Id.* at 171, 699 N.W.2d at 38. The test was "whether, notwithstanding the omission, the sworn report conveys the information required by the applicable statute." *Id.*

In the present case, the applicable statute required the sworn report to state "(a) that the person was arrested as described in subsection (2) of section 60-6,197 and *the reasons for such arrest*, (b) that the person was requested to submit to the required test, and (c) that the person refused to submit to the required test." (Emphasis supplied.) § 60-498.01(2). The problem was not that required sections of the sworn report were omitted. The officers checked the appropriate boxes and filled out the required sections. The problem, according to the district court, was that the explanation given by the officers as to why Betterman was arrested was not specific enough to establish a prima facie basis for revocation.

The issue is whether the sworn report was sufficient to support a prima facie case for license revocation. In an ALR proceeding, the sworn report of the arresting officer must, at a minimum, contain the information specified in the applicable statute in

order to confer jurisdiction. *Hahn v. Neth*, 270 Neb. 164, 699 N.W.2d 32 (2005). A sworn report must state that the person was arrested as described in § 60-6,197(2) and the reasons for such arrest. See § 60-498.01(2). An arrest described in § 60-6,197(2) is an arrest "for any offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor or drugs."

The sworn report stated that Betterman was arrested because he had been driving recklessly, displayed signs of alcohol intoxication, and refused field sobriety tests and a breath test. The district court opined that the stated reason of "reckless driving" may have indicated why Betterman was stopped but did not indicate he was driving while under the influence of alcohol. The court also opined that Betterman's refusal of the chemical test and field sobriety tests was not a factor indicating he was under the influence and that "'displayed signs of alcohol intoxication'" was a broad conclusion and not sufficient to support probable cause that Betterman was driving under the influence of alcohol. The court stated that the officers should have listed such observations as slurred speech, bloodshot eyes, smelled of alcohol, mental confusion, or unsteadiness, observations which Schmaderer testified about at the hearing.

We conclude that the sworn report conveyed the information required by § 60-498.01(2). All the appropriate boxes were checked, and the proper sections were filled out. "[R]eckless driving" was a valid reason for a police officer to stop Betterman's vehicle. And because Betterman "displayed signs of alcohol intoxication," the officer had cause to allege that Betterman was "driving . . . a motor vehicle while under the influence of alcoholic liquor." See § 60-6,197(2). A prima facie case for license revocation was made on the sworn report.

Betterman further claims the report was insufficient to confer jurisdiction (1) because the report stated that Betterman was arrested "pursuant to Neb. Rev. Stat. § 60-6,197," instead of the statutory phrase "as described in subsection (2) of section 60-6,197," and (2) because the report stated that "[t]he individual was directed to submit to a chemical test," instead of the statutory phrase "the person was requested to submit to the required test."

See, § 60-498.01(2); brief for appellant in case No. S-05-638 at 21-22. These claims are without merit. The test is not whether the sworn report used the verbatim language of the statute, but whether the report conveyed the information required by the applicable statute. See *Hahn, supra.*

### 2. EMPLOYMENT STATUS OF HEARING OFFICER

Betterman claims that the director violated Neb. Rev. Stat. § 84-913.04 (Reissue 1999) because the hearing officer was an employee of the DMV. Section 84-913.04(2) provides that a "person who is subject to the authority, direction, or discretion of one who has served as investigator, prosecutor, or advocate in a contested case or in its prehearing stage may not serve as hearing officer" unless all parties consent. Betterman's theory is that the director acted as an "advocate" for the department when responding to the motion to dismiss filed by Betterman with the DMV. See brief for appellant in case No. S-05-638 at 22.

On appeal to the district court, Betterman claimed he was denied his right to a hearing before an impartial board because the hearing officer was an employee of the DMV. The court rejected Betterman's argument because he had neither objected to the hearing officer nor presented any evidence on this issue in proceedings before the DMV. In his assignments of error before this court, Betterman asserts that the district court erred in finding that he had waived any objection regarding the hearing officer, in not taking judicial notice that the hearing officer was a DMV employee, and in failing to either dismiss the proceedings or remand the case to the DMV for a determination of the hearing officer's employment status.

### (a) Issue Not Raised in Administrative Proceedings

In reviewing final administrative orders under the APA, the district court functions not as a trial court but as an intermediate court of appeals. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997). Generally, in an appeal under the APA, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the administrative agency. *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). The court has discretion to remand a case to the agency for further proceedings if the court determines that the interest of justice would be served

by the resolution of any other issue not raised before the agency. See Neb. Rev. Stat. § 84-917(5)(b) (Reissue 1999).

Betterman did not object to the hearing officer's conducting the ALR hearing, and no evidence was presented on this issue at the hearing. No motion to recuse the hearing officer was filed in accordance with the DMV's regulations. See 247 Neb. Admin. Code, ch. 1, § 003.04 (2001). We conclude that the district court did not err in refusing to consider the issue of the hearing officer's employment status, an issue not presented to or passed upon by the agency. The court did not abuse its discretion in declining to remand the matter to the agency for further proceedings.

(b) No Judicial Notice

Betterman argues that the district court should have taken judicial notice of the hearing officer's employment status. He now asks this court to take judicial notice of this alleged fact.

█ Assuming (without deciding) that the employment status of the hearing officer could properly be considered an adjudicative fact not subject to reasonable dispute, judicial notice could nevertheless not be taken. In *Wolgamott,* this court held that when reviewing a final decision of an administrative agency in a contested case under the APA, a court may not take judicial notice of an adjudicative fact that was not presented to the agency, because the taking of such evidence would impermissibly expand the court's statutory scope of review de novo on the record of the agency. The APA does not authorize a district court reviewing the decision of an administrative agency to receive additional evidence, whether by judicial notice or other means. *Wolgamott, supra.*

Betterman points out that this court has also announced a rule that seemingly contradicts the holding in *Wolgamott.* We have noted that "[i]n a de novo review on the record of an agency, the record consists of the transcripts and bill of exceptions of the proceedings before the agency and facts capable of being judicially noticed pursuant to Neb. Evid. R. 201." *Vinci v. Nebraska Dept. of Corr. Servs.,* 253 Neb. 423, 437, 571 N.W.2d 53, 62 (1997). See, also, *Slack Nsg. Home v. Department of Soc. Servs.,* 247 Neb. 452, 528 N.W.2d 285 (1995).

In the cases of *Vinci* and *Slack Nsg. Home*, this court suggested that the record could include facts capable of being judicially noticed. But in neither case was judicial notice at issue. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997), on the other hand, involved the issue of whether judicial notice is appropriate in an appeal from an agency decision. In that case, a motorist appealed the administrative revocation of his driver's license for failure to submit to chemical testing. The motorist claimed that the advisory form read to him by the arresting officer was defective. The advisory form did not appear in the record of the administrative hearing, and the motorist claimed that the lower courts should have taken judicial notice of the form. This court disagreed and held that a court may not take judicial notice of an adjudicative fact that was not presented to the agency.

We expressly considered the issue of judicial notice in *Wolgamott*, and therefore, it is the controlling case with regard to judicial notice in an appeal from an agency decision. To the extent that *Vinci* and *Slack Nsg. Home* suggest that the record of an agency may include adjudicative facts not presented to the agency, that interpretation is disapproved.

Betterman further argues that under Neb. Rev. Stat. § 84-915.01(3) (Reissue 1999), the "record," for review purposes, included matters that were required to be considered by "'another statute.'" Brief for appellant in case No. S-05-638 at 25. At all times relevant to this case, § 84-915.01(3) provided: "Except to the extent that the act or *another statute* provides otherwise, the agency record shall constitute the exclusive basis for . . . judicial review thereof." (Emphasis supplied.) Betterman asserts that under Neb. Rev. Stat. § 27-201 (Reissue 1995), a court must take judicial notice if requested by a party and supplied with the necessary information and that judicial notice may be taken at any stage of a proceeding. He thus argues that "another statute" (i.e., § 27-201) required the district court (and this court) to take judicial notice of the employment status of the hearing officer.

To the extent that a conflict exists between statutes on the same subject, specific statutes control over general statutes. See

*In re Application of Metropolitan Util. Dist.*, 270 Neb. 494, 704 N.W.2d 237 (2005). Betterman's interpretation of § 84-915.01(3) is incorrect. Section 27-201 is a general rule of evidence concerning judicial notice of adjudicative facts. Both §§ 84-915.01 and 84-917(5) specifically address judicial review of agency decisions, and these statutes provide that the record of the agency is the exclusive basis for review. The "record" under § 84-917(5) has been interpreted to exclude judicial notice of adjudicative facts. See *Wolgamott, supra.*

The district court did not err in refusing to consider Betterman's argument with regard to the impartiality of the hearing officer or in refusing to take judicial notice of the employment status of the hearing officer.

### 3. REFUSAL OF BREATH TEST

■ Betterman maintains the district court erred in finding that he refused to submit to a chemical test of his breath in accordance with § 60-6,197. An arrested motorist refuses to submit to a chemical test when the motorist's conduct, demonstrated under the circumstances confronting the officer requesting the chemical test, justifies a reasonable person's belief that the motorist understood the officer's request for a test and manifested a refusal or unwillingness to submit to the requested test. *Urwiller v. Neth*, 263 Neb. 429, 640 N.W.2d 417 (2002). Anything short of an unqualified, unequivocal assent to an officer's request that the arrested licensee take the test constitutes a refusal to do so. *Id.*

Schmaderer testified that Betterman refused all field sobriety tests, including a preliminary breath test, and that he appeared annoyed with the officers' requests to perform such tests. At the police station, Betterman requested a drink of water, and water was given to him. Betterman signed a postarrest chemical test advisement form, which indicated Betterman's knowledge that he was being asked to submit to a chemical test and that refusal to submit was a separate crime for which he could be charged, and he verbally agreed to take the test.

In the room where Breathalyzer tests were given, Betterman again asked for water several times, but his requests were denied because the police department's protocol was to observe a person for 15 minutes before conducting the breath test, during

which time, the person was not allowed to put anything in his or her mouth. Given that Betterman had earlier been provided a glass of water, that he was being argumentative, and that the officers explained to him that he would be provided more water once he completed the test, Schmaderer testified that Betterman "appeared to be . . . being obstructive with us" by repeatedly asking for water. Betterman refused to follow Kyler's instructions regarding the breath test. He twice said he would not take the breath test until he had a drink of water. Kyler concluded that Betterman was refusing the test.

In light of Betterman's actions, a reasonable person could believe that Betterman understood the request for a test and manifested a refusal or unwillingness to submit. Accordingly, we conclude that competent evidence supports the district court's finding that Betterman refused to submit to the chemical test.

### 4. STANDARD OF REVIEW APPLIED BY DISTRICT COURT

Proceedings for review of a final decision of an administrative agency are held to the district court, which conducts the review without a jury de novo on the record of the agency. See, § 84-917(5)(a); *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997). Betterman claims the district court applied the wrong standard of review. According to Betterman, the court applied a "'substantial evidence'" test instead of reviewing the case de novo on the record. See brief for appellant in case No. S-05-638 at 30. A review of the record indicates that the court applied the correct standard of review. The court used the phrase "substantial evidence" in response to Betterman's allegation that the director's order was "unsupported by competent, material, and substantial evidence." But before beginning its analysis, the court expressed the standard of review as "de novo," and at the end, the court declared that it had conducted a "de novo review" of the record and affirmed the director's decision. Betterman's claim is without merit.

### 5. ABSENCE OF OFFICER KILEY FROM ALR HEARING

Schmaderer, Kiley, and Kyler signed the sworn report in the area labeled "Signatures of Arresting Officer(s)." Schmaderer and Kyler appeared at the ALR hearing, but Kiley was unable to attend. Betterman's motion to dismiss based on Kiley's absence

was overruled. The DMV asked for a continuance so Kiley could attend, and Betterman had no response. On review, the district court found that Schmaderer was best able to provide the hearing officer with information relating to the factors underlying the revocation and that, therefore, Kiley's appearance was not required to satisfy the agency's own regulation (247 Neb. Admin. Code, ch. 1, § 017.02 (2001)) or to satisfy Betterman's right to due process. The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.*, 272 Neb. 390, 722 N.W.2d 10 (2006).

Betterman asserts that his constitutional rights to due process were violated by Kiley's absence. Betterman cites several cases from other jurisdictions to support this claim. However, the cases cited in Betterman's brief are inapposite, because none of them answer the questions involved in this appeal. In those cases, the motorists had no opportunity to cross-examine *any* arresting officer; whereas, Betterman was able to cross-examine two of the three persons who signed the sworn report.

 Before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case. *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006). In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Id.* The DMV's regulations provide that the "failure of the arresting officer to appear [at the ALR hearing] or be otherwise available for cross-examination shall be cause for dismissal of the administrative license revocation by the Department of Motor Vehicles except when the motorist does not appear or make any showing." See § 017.02.

 The question presented is, When there are multiple arresting officers, how many of them must appear at the hearing? In *Arndt v. Department of Motor Vehicles*, 270 Neb. 172, 699 N.W.2d 39 (2005), a motorist argued that the sworn report was not completed by the arresting officer, as required by § 60-498.01.

This court determined that an arresting officer is an officer who is present at the scene of the arrest for purposes of assisting in it. In this case, both Schmaderer and Kiley assisted in arresting Betterman. For purposes of § 60-498.01, then, both officers were "arresting" officers.

When defining the term "arresting officer" in *Arndt*, this court approved the definition set forth by the Nebraska Court of Appeals in *Connelly v. Department of Motor Vehicles*, 9 Neb. App. 708, 618 N.W.2d 715 (2000). In that case, two officers arrested a motorist who failed a chemical test, but only one of the officers prepared the ALR documents and appeared at the hearing. In considering the meaning of the term "arresting officer" for purposes of § 017.02, the Court of Appeals first determined that because the term could reasonably be subjected to more than one interpretation, it was subject to judicial determination. The court stated that an "arresting officer" was an officer who was present at the scene of the arrest for purposes of assisting in it.

The Court of Appeals then addressed whether the due process requirements of § 017.02 could be satisfied by the presence of only one officer at the ALR hearing. It held that the presence of one of two arresting officers at an ALR hearing satisfied the due process requirements of § 017.02 if the officer who was present questioned and tested the motorist and was best able to provide the hearing officer with information relating to the factors underlying the revocation.

We conclude that the due process requirements of § 017.02 are satisfied in a refusal-to-submit ALR proceeding by the presence of an arresting officer who questioned the motorist, who observed the motorist refuse to submit to a chemical test, and who can provide the hearing officer with information relating to the factors underlying the revocation.

In an ALR hearing, the factors underlying a revocation for refusal to submit are:

> (A) Did the peace officer have probable cause to believe the person was operating or in the actual physical control of a motor vehicle in violation of section 60-6,196 or a city or village ordinance enacted in conformance with such section[?]; and

(B) Did the person refuse to submit to or fail to complete a chemical test after being requested to do so by the peace officer[?]

§ 60-498.01(6)(c)(i).

In the present case, Schmaderer observed Betterman's erratic driving and conducted the traffic stop. He observed that Betterman exhibited bloodshot and watery eyes; that he talked with slurred speech; that he acted confused when trying to find his driver's license, automobile registration, and proof of insurance; and that he smelled of alcohol. Schmaderer questioned Betterman and attempted to conduct field sobriety tests, which Betterman refused to perform. With assistance from Kiley, Schmaderer arrested Betterman. Although Kiley transported Betterman to the police station, Schmaderer observed Betterman refusing to submit to the breath test at the police station. Thus, Schmaderer meets the above-given description of the arresting officer required to attend the ALR hearing, and he was available for cross-examination at the ALR hearing.

The district court did not err in finding that the evidence before the hearing officer established that Kiley's appearance at the ALR hearing was not mandatory because Schmaderer could provide the hearing officer with information relating to the factors underlying the revocation. Betterman's claim that his due process rights were violated by Kiley's absence is without merit.

### 6. DMV's Granting of Two Continuances

The DMV regulations provide that continuances may be granted upon good cause shown. See 247 Neb. Admin. Code, ch. 1, §§ 010.01 and 010.04 (2001). Betterman's ALR hearing was originally scheduled for October 15, 2004. Kiley gave notice to the DMV on October 12 that Kyler would not be able to attend the hearing because she was on vacation. The director found good cause to continue the hearing, and it was rescheduled for November 2. Betterman's temporary license was extended through the new hearing date. On October 20, Schmaderer notified the DMV that he could not appear November 2 because he was on special duty. The director found good cause to continue the hearing, and it was rescheduled for November 18. Betterman's temporary license was again extended through the new hearing date.

Betterman moved to dismiss the proceedings because of the two continuances. The hearing officer denied Betterman's motion. On review, the district court found that the officers' notices to the director provided too few facts for the director to have found good cause; however, the court found that no prejudice resulted from the denial of Betterman's motions to dismiss because no substantial injustice resulted to him. Betterman asserts that the court erred in so finding.

In *Searcey v. Nebraska Dept. of Motor Vehicles*, 12 Neb. App. 517, 679 N.W.2d 242 (2004), the Court of Appeals found that good cause had not been shown for a continuance but concluded that the director did not abuse her discretion in granting the continuance because it did not cause the motorist substantial injustice, given that he retained his privilege to drive. Error without prejudice provides no ground for appellate relief. *Lamar Co. v. Omaha Zoning Bd. of Appeals*, 271 Neb. 473, 713 N.W.2d 406 (2006). Assuming, for purposes of argument, that good cause was not shown and that the director erred in granting the continuances, Betterman has not shown that such error prejudiced him. Betterman retained his driving privileges until the hearing was held. His argument is without merit.

### 7. HOLDING OF HEARING BEYOND 20-DAY LIMIT

Although the ALR hearing was held more than 20 days after Betterman requested it because of the continuances, the district court found that the time limit in § 60-498.01(6)(b) is directory, not mandatory, and that the director did not abuse her discretion by granting the continuances. Betterman assigns this ruling as error.

The Court of Appeals has held that the timeframe for holding an ALR hearing is directory, not mandatory. See, *Searcey, supra*; *Randall v. Department of Motor Vehicles*, 10 Neb. App. 469, 632 N.W.2d 799 (2001). In *Randall*, the court concluded that a violation of the regulatory time limit did not invalidate the ALR proceedings unless the motorist could show that he or she was prejudiced by the delay. The court explained:

> In the instant case, the time limitation in [the regulation] is not "'essential to the main objective'" of the ALR statutes. "[T]he purpose of ALR is to protect the public from the health and safety hazards of drunk driving by quickly

getting [driving while under the influence] offenders off the road. At the same time, the ALR statutes also further a purpose of deterring other Nebraskans from driving drunk." *State v. Young*, 249 Neb. 539, 541-42, 544 N.W.2d 808, 811 (1996), citing *State v. Hansen*, 249 Neb. 177, 542 N.W.2d 424 (1996). The time limitation in [the regulation] is not essential to the purpose of the ALR statutes, but, rather, the time limitation ensures order and promptness in ALR proceedings. The failure to strictly abide by the time limitation . . . does not interfere with the fundamental purpose of the ALR statutes. The main goal of removing drunk drivers off the roads can still be attained when hearings are held past the . . . time limitation. Therefore, [the regulation] is directory rather than mandatory.

*Randall*, 10 Neb. App. at 477-78, 632 N.W.2d at 806.

We agree with the Court of Appeals. The failure to hold a hearing within the time provided in § 60-498.01(6)(b) does not invalidate the ALR proceedings unless the motorist can show that he or she was prejudiced by the delay. Betterman has not shown that he was prejudiced because the hearing was more than 20 days after his request. The delay was minor in length, during which time, Betterman retained his privilege to drive. The district court did not err in finding that the director did not abuse her discretion by continuing the hearing beyond the 20-day limitation.

## 8. Constitutionality of ALR Statutes

Betterman claims that §§ 60-498.01 and 60-498.02 violate the Equal Protection and Due Process Clauses of the Nebraska and U.S. Constitutions. He argues that the statutory scheme impermissibly treats differently two classes of persons—i.e., motorists who submit to and fail a chemical test and motorists who refuse to submit to a chemical test. We have previously held that the ALR provisions pertaining to motorists who refuse to submit to chemical testing do not violate the due process or equal protection rights of those motorists by treating them differently than motorists who submit to, but fail, such testing. See *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006).

Betterman also claims that the ALR statutes violate the prohibition against special legislation in article III, § 18, of the Nebraska Constitution. However, he makes no argument in

support of this claim. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Heitzman v. Thompson*, 270 Neb. 600, 705 N.W.2d 426 (2005).

Betterman's arguments regarding the constitutionality of the ALR statutory scheme are without merit. We conclude that the district court did not err in finding that the ALR statutes were constitutional.

### 9. ACQUITTAL AS NEWLY DISCOVERED EVIDENCE

While case No. S-05-638 was pending in this court, Betterman was acquitted of the criminal refusal charge lodged against him. Betterman then filed a motion with the DMV in which he asked the director to vacate the order that had administratively revoked his driver's license. He claimed another hearing was required because of newly discovered evidence, including evidence that he had been acquitted of the criminal refusal charge. The director denied Betterman's request because no statutory provision permitted her to vacate such revocation if a motorist was acquitted of criminal charges arising from the same incident. Betterman appealed to the district court, and the court refused to reverse the director's ruling.

Generally, in civil appeals, after an appeal to an appellate court has been perfected, a lower court is without jurisdiction to hear a case involving the same matter between the same parties. *Ventura v. State*, 246 Neb. 116, 517 N.W.2d 368 (1994). However, in *Ventura*, we held that an administrative agency may rule on a motion for new trial on the ground of newly discovered evidence, if timely presented, although the cause is pending in an appellate court for review.

The issue presented is whether the fact that Betterman was acquitted of the criminal refusal-to-submit charge was newly discovered evidence necessitating a new ALR hearing. Under Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2006), a new trial may be granted if new evidence has been discovered which materially affects the substantial rights of the moving party. In order to make a sufficient showing for a new trial on the ground of newly discovered evidence, the proof in support thereof must show that such evidence is now available which neither the litigant nor counsel could have discovered by the exercise of reasonable

diligence and that the evidence is not merely cumulative, but competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

In cases of motorists who refuse to submit to chemical testing, the ALR statutory scheme does not operate to reinstate the motorist's administratively revoked driver's license if he or she is acquitted of the criminal refusal charge. See *Kenley v. Neth*, 271 Neb. 402, 712 N.W.2d 251 (2006). This court has consistently opined that a civil ALR proceeding is separate and distinct from a criminal prosecution for driving under the influence or refusal to submit to chemical testing arising from the same incident. See *id.* Accordingly, we have stated that "although a motorist who refuses to submit to testing could subsequently be acquitted of the corresponding criminal charge, this fact is irrelevant to the ALR process." *Id.* at 410, 712 N.W.2d at 260.

In the present case, even if evidence of Betterman's acquittal in the criminal case were to be admitted in a new ALR hearing, its admission would not affect the outcome. Therefore, the district court did not err in refusing to reverse the director's order.

## VI. CONCLUSION

The district court did not err in affirming both the director's order administratively revoking Betterman's driver's license and the director's refusal to vacate such order. Therefore, we affirm the judgments of the district court.

AFFIRMED.