UTELCOM, INC., APPELLANT, V. MARY JANE EGR, TAX
COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLEES.
U.S. TELECOM, INC., APPELLANT, V. MARY JANE EGR, TAX
COMMISSIONER OF THE STATE OF NEBRASKA, ET AL., APPELLEES.
UCOM, INC., APPELLANT, V. MARY JANE EGR, TAX COMMISSIONER
OF THE STATE OF NEBRASKA, ET AL., APPELLEES.
653 N.W.2d 846

Filed December 6, 2002. Nos. S-01-874 through S-01-876.

William E. Peters, of Peters & Chunka, P.C., L.L.O., for appellants.

Don Stenberg, Attorney General, and L. Jay Bartel for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

In this consolidated appeal, we determine how an automatic extension of time for filing a corporate income tax return affects

the determination of when the 3-year limitation period for claiming a refund begins. Neb. Rev. Stat. § 77-2793(1) (Reissue 1996) requires that a taxpayer file a claim for an income tax refund within 3 years from the time the taxpayer filed its return. However, a department regulation states that "[a] return filed before the due date of the return will be presumed filed on the last day of the filing period." 316 Neb. Admin. Code, ch. 33, § 005.01B(3) (1983).

We must decide if this regulatory presumption applies when a taxpayer, after receiving an extension for filing its return, files before the extended deadline. If the presumption applies, the 3-year period for claiming a refund begins on the date of the extended deadline. If it does not apply, the period begins on the date the taxpayer actually filed its return. The Tax Commissioner determined that the period begins when a return is actually filed and denied the refunds claimed by Utelcom, Inc.; U.S. Telecom, Inc.; and Ucom, Inc. (collectively the taxpayers). The district court agreed, and the taxpayers appealed. We reverse, and remand with directions.

## I. FACTUAL BACKGROUND

The facts are not in dispute. The taxpayers were each required to file an income tax return for the 1995 tax year. March 15, 1996, was the taxpayers' original deadline for filing their returns. See, Neb. Rev. Stat. § 77-2768 (Reissue 1996); 316 Neb. Admin. Code, ch. 24, § 006.01 (1998). Each taxpayer, however, was granted a 7-month automatic extension, extending the deadline for filing their 1995 income tax returns to October 15, 1996. The forms granting the extensions to the taxpayers refer to October 15 as being the "Due Date of Return."

Utelcom filed its return on September 19, 1996, and Ucom and U.S. Telcom filed their returns on October 10, 1996. For this appeal, the difference in dates is not relevant. The key fact is that each taxpayer filed its income tax return *before* October 15, 1996. On October 15, 1999—exactly 3 years from the extended deadline for filing their original returns, but more than 3 years from the time they actually filed their original returns—the tax-payers filed amended income tax returns claiming refunds in the collective amount of $568,986 for the 1995 tax year. The Tax Commissioner denied the refunds, stating that the amended tax

returns were not filed within the 3-year period for claiming a refund. The district court agreed with the Tax Commissioner, and the taxpayers appealed.

## II. ASSIGNMENT OF ERROR

The taxpayers assign that the district court erred in finding that their amended tax returns claiming a refund were not filed within the 3-year limitation period established by § 77-2793(1).

## III. STANDARD OF REVIEW

■ A judgment or final order rendered by a district court in a judicial review under the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *American Bus. Info. v. Egr, ante* p. 574, 650 N.W.2d 251 (2002); *Capitol City Telephone v. Nebraska Dept. of Rev., ante* p. 515, 650 N.W.2d 467 (2002).

■ When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Capitol City Telephone v. Nebraska Dept. of Rev., supra.*

■ An appellate court, in reviewing a district court judgment for errors appearing on the record, under the Administrative Procedure Act, will not substitute its factual findings for those of the district court when competent evidence supports those findings. *Id.*

■ To the extent the interpretation of statutes and regulations is involved, questions of law are presented, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below, according deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. *Capitol City Telephone v. Nebraska Dept. of Rev., supra; Inner Harbour Hospitals v. State,* 251 Neb 793, 559 N.W.2d 487 (1997).

## IV. ANALYSIS

### 1. STATUTORY AND REGULATORY BACKGROUND

Section 77-2793(1) sets out the time period for claiming an income tax refund. It provides that "[a] claim for credit or refund

of an overpayment of any income tax imposed . . . *shall be filed by the taxpayer within three years from the time the return was filed* or two years from the time the tax was paid, whichever of such periods expires later." (Emphasis supplied.) Absent any regulatory gloss, applying § 77-2793(1) is relatively straightforward. Regardless of any "due date," the taxpayer would have 3 years from the date it filed its return to file a claim for a refund. The taxpayer's deadline for filing, original or extended, would be irrelevant. Thus, if a corporate taxpayer filed its return on March 10, 2000, it would have until March 10, 2003, to claim a refund. That its original filing deadline was March 15, 2000, would be irrelevant. Likewise, if under an extension, the taxpayer filed its return on October 10, 2000, it would have until October 10, 2003, to claim a refund.

This straightforward application of § 77-2793(1), however, is inconsistent with the Internal Revenue Code (I.R.C.), resulting in a potential trap for the unwary taxpayer. See *Hamacher v. Director of Revenue*, 779 S.W.2d 565 (Mo. 1989). Like § 77-2793(1), I.R.C. § 6511(a) (2000) provides:

Claim for credit or refund of an overpayment of any tax . . . in respect of which tax the taxpayer is required to file a return *shall be filed by the taxpayer within 3 years from the time the return was filed* or 2 years from the time the tax was paid, whichever of such periods expires the later . . . .

(Emphasis supplied.) But unlike the Nebraska income tax statutes, I.R.C. § 6513(a) (2000) explicitly sets up a presumed filing date: "[A]ny return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day." Thus, under the I.R.C., if the taxpayer filed on March 10, 2000, the taxpayer would have a presumed filing date of 3 years from March 15, 2000. As a result, under the I.R.C., the taxpayer would have until March 15, 2003, to claim a federal refund. In contrast, under a straightforward application of § 77-2793(1), the same taxpayer would have only until March 10, 2003, to claim a Nebraska refund.

The regulation at issue—316 Neb. Admin. Code, ch. 33, § 005.01B(3)—was adopted by the Nebraska Department of Revenue (the Department) apparently to ensure that the discrepancy between § 77-2793(1) and I.R.C. would not arise. It

provides that "[a] return filed before the due date of the return will be presumed filed on the last day of the filing period." Unfortunately, the language of § 005.01B(3) is not precise. The regulation fails to specify what is meant by "due date" or by "the last day of the filing period," and it does not explain how an extension affects the presumption it sets out.

Here, the dispute stems from this imprecision. The parties agree that if a taxpayer files its return before the original deadline for filing, § 005.01B(3) applies, and it is presumed that the taxpayer filed on the original deadline. The parties disagree whether the same analysis applies when a taxpayer is granted an extension for filing its return and files before the extended deadline. The taxpayers argue that § 005.01B(3) applies when a taxpayer files before an extended deadline, just as it does when a taxpayer files before its original deadline. Under this view, the taxpayers' amended tax returns were timely because they filed them within 3 years of the October 15, 1996, extended deadline. The Department argues that § 005.01B(3) applies only when a taxpayer files its return before the original deadline. Under this view, the taxpayers' amended returns were untimely because they were filed more than 3 years after the taxpayers actually filed their original 1995 returns.

The court found the Department's interpretation of § 005.01B(3) to be more persuasive. The court concluded that the regulatory presumption in § 005.01B(3) applies only if the taxpayer filed before its "due date." Thus, the key question for the court was the meaning of "due date." Noting that the concept of a "due date" is only introduced in the Department's regulations, the court looked to other regulations and determined that the regulatory scheme draws a distinction between due date and the expiration of the period of an extension. The court concluded that "due date" as used in § 005.01B(3) most clearly referred to March 15, 1996, and that October 15, 1996, was not a "due date," but the expiration of an extension period. Because we conclude that the court incorrectly construed § 005.01B(3), we reverse, and remand with directions.

### 2. INTERPRETATION OF § 005.01B(3)

For purposes of construction, a rule or order of an administrative agency is treated like a statute. *Stratbucker Children's*

*Trust v. Zoning Bd. of Appeals*, 243 Neb. 68, 497 N.W.2d 671 (1993); *Dozler v. Conrad*, 3 Neb. App. 735, 532 N.W.2d 42 (1995). Absent anything to the contrary, language contained in a rule or regulation is to be given its plain and ordinary meaning. *Busch v. Omaha Pub. Sch. Dist.*, 261 Neb. 484, 623 N.W.2d 672 (2001). A regulation is open for construction only when the language used requires interpretation or may reasonably be considered ambiguous. *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998).

Section 005.01B(3) does not clarify what effect an extension has on the presumption it sets out. It uses the term "due date," but within the context of the regulation, that term could reasonably be construed to mean only the original deadline for filing a return or to include the extended deadline for filing a return. Accord *Conoco v. Dept. of Revenue & Finance*, 477 N.W.2d 377 (Iowa 1991) (holding that "due date" could reasonably be construed as meaning original filing date or date to which extension is granted). Moreover, it is unclear if "the last day of the filing period" or "due date" is the term that controls the answer to this case. In fact, the regulation reads as if the two terms have the same meaning. Thus, § 005.01B(3) is ambiguous and open for construction.

### (a) Deference to Be Given to Department's Interpretation

As an initial matter, we must determine what level of deference to give to the Department's interpretation of § 005.01B(3). Generally, we give deference to an agency's interpretation of its own regulations. See *Capitol City Telephone v. Nebraska Dept. of Rev.*, ante p. 515, 650 N.W.2d 467 (2002). We do not give an agency deference, however, if the interpretation it has given to its regulation is plainly erroneous or inconsistent. *Id.*

■ Here, the Department is proposing an interpretation of § 005.01B(3) that is inconsistent with how it has previously advised taxpayers. When the taxpayers in this case requested their extensions, they were sent notices telling them the requests had been granted. The notices have a section labeled "Due Date of Return." The date on this section is October 15, 1996. This indicates that when it sent the notices to the taxpayers, the

Department did not draw the distinction it now does between a "due date" and additional time to file a return. When an agency offers an interpretation of a disputed regulation during litigation that is inconsistent with its prior statements and actions regarding the regulation, the interpretation is not entitled to deference. See *Drake v. F.A.A.*, 291 F.3d 59 (D.C. Cir. 2002). See, also, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 446 n.30, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987) ("[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view"). Accordingly, we give no deference to the Department's interpretation of § 005.01B(3).

### (b) Effect of Regulatory Scheme

■ A court will construe statutes relating to the same subject matter together to maintain a consistent and sensible scheme. See *Gottsch Feeding Corp. v. State*, 261 Neb. 19, 621 N.W.2d 109 (2001). The same rule applies in interpreting regulations. The court found the remainder of the regulatory scheme supported the Department's interpretations. We disagree and conclude that the regulatory scheme supports the taxpayers' interpretation of § 005.01B(3).

In determining the meaning of "due date," the district court relied primarily on 316 Neb. Admin. Code, ch. 24, §§ 006.01 and 007.02C (1998). The first sentence of § 006.01 provides that "[t]he due date for Nebraska Corporation Income Tax Return, Form 1120N, is the 15th day of March following the close of the calendar year." This language appears to support the Department's argument that the "due date" referred to in § 005.01B(3) is a taxpayer's original deadline for filing its return. The first sentence of § 007.02C provides that "[i]f an extension of time for payment of a tax is granted, the tax shall be paid on or before the expiration of the period of the extension . . . ." While § 007.02C does not involve the filing of a tax return, it does, as noted by the district court, suggest that "the expiration of the period of the extension" and a "due date" are different.

However, another regulation suggests that March 15 is not the only possible "due date." The procedure for filing a corporate

extension is set out in 316 Neb. Admin. Code, ch. 24, § 007.01 (1998), which provides:

> A corporate taxpayer may obtain an automatic extension of seven months for filing its return, provided that Form 7004N is filed on or before the prescribed due date for the return and provided that the amount of tentatively computed tax liability is paid on or before *the original due date for filing the corporation income tax return.*

(Emphasis supplied.) Presumably, the original deadline for filing an income tax return is the "original due date," and the use of that term suggests not only that other types of due dates exist, but that the Department knows how to draw a distinction between the "original due date" and other types of "due dates."

Moreover, § 006.01 (the same section that states the due date for filing is March 15) provides that "[t]he corporate taxpayer shall pay the entire amount of tax on or before the prescribed due date, *without regard to any extension granted for filing the return.*" (Emphasis supplied.) Similarly, the second sentence of § 007.02C (the same regulation that suggests a distinction between a "due date" and the "expiration of the period of the extension") provides that "[i]nterest will be due on the tax payment from the original date prescribed for payment until the date the payment was actually made, *regardless of any extension of time.*" (Emphasis supplied.) The italicized language in both of these regulations suggests the Department knew how to use language that would limit the effect of an extension.

The Department used this limiting language in other regulations—that an extension would have no effect—but did not do so in § 005.01B(3), which shows that the Department intended the presumption in § 005.01B(3) to include extended deadlines. See *Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm.*, 260 Neb. 905, 620 N.W.2d 90 (2000). In *Creighton St. Joseph Hosp.*, we were asked to decide whether the filing fee for an appeal from a county board of equalization to the Nebraska Tax Equalization and Review Commission was a jurisdictional requirement. We noted that in other appeal statutes, the Legislature had used explicit and clear language to establish that a filing fee was jurisdictional, but that in the statute in question, the Legislature had not used the same or similar language. We

concluded that the other statutes demonstrated that the Legislature knew how to make a filing fee jurisdictional and that its failure to include similar language demonstrated its intent not to make the filing fee a jurisdictional requirement.

If the Department did not want § 005.01B(3) to apply to extended deadlines, it could have adopted the term "original due date" from § 007.01 and used it in § 005.01B(3) instead of just "due date." In the alternative, it could have adopted the language in § 007.02C and clarified that the "due date of the return" and "the last day of the filing period" as used in § 005.01B(3) would be determined without "regard to any extension of time." Just as in *Creighton St. Joseph Hosp.*, the absence of this language in § 005.01B(3) indicates that the Department did not intend to exclude extended deadlines from the regulation's scope.

### (c) Department's Counterarguments

The Department makes two arguments in support of its interpretation of § 005.01B(3). First, the Department argues that we should construe § 005.01B(3) so that it is consistent with federal law. In construing the income tax statutes, the Legislature has instructed us that any terms used "shall have the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required." Neb. Rev. Stat. § 77-2714 (Reissue 1996). By analogy, the Department argues that we should construe the terms in its regulations relating to income tax so that they are consistent with terms used in the I.R.C. Regardless of whether this is a correct rule of regulatory interpretation, it does not benefit the Department in this case.

As noted above, I.R.C. § 6513(a), like § 005.01B(3), presumes that "any return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day." Unlike § 005.01B(3), however, I.R.C. § 6513(a) explicitly clarifies that "the last day prescribed for filing the return . . . shall be determined without regard to any extension of time granted the taxpayer." Thus, under the I.R.C., "a claim for refund must be filed within three years of either the due date (without regard to any extension of time) or the filing date, whichever is later." *Foster v. United States*, 221 F. Supp. 291, 296 (S.D.N.Y. 1963),

*affirmed* 329 F.2d 717 (2d Cir. 1964). This is the interpretation that the Department now urges us to give to § 005.01B(3). But it is not within the province of the courts to read a meaning into a regulation that is not there. See *Shaul v. Lang*, 263 Neb. 499, 640 N.W.2d 668 (2002). If the Department wanted the federal rule, I.R.C. § 6513(a) provided it with a clear and unambiguous model for adopting the rule. Instead of tracking the federal language, the Department chose to use the language it did, which shows that it did not intend for § 005.01B(3) to have the same meaning as the I.R.C.

Second, the Department argues that the taxpayers' interpretation of § 005.01B(3) would make the regulation invalid because it would lengthen the time for claiming a refund beyond the 3-year limitation imposed by § 77-2793(1). This argument is inconsistent with the Department's position that § 005.01B(3) applies when a taxpayer files before its original deadline for filing. In effect, the Department claims that it cannot adopt a regulation that would presume a taxpayer filed on its extended deadline, *because that would allow the taxpayer to claim a refund more than 3 years after it actually filed.* But at the same time, it suggests that it can adopt a regulation that would presume a taxpayer filed on its original deadline, *even though that would allow the taxpayer to claim a refund more than 3 years after it actually filed.* The distinction is nonsensical. If the statutory language allows the Department to do the former, nothing bars it from doing the latter.

## V. CONCLUSION

 We hold that under § 005.01B(3), when a corporate taxpayer is granted an automatic extension for filing its tax return, the 3-year limitation period for claiming a refund begins to run on the date of the extended deadline for filing the return, rather than on the date the taxpayer actually filed its return. As a result, the taxpayers had until October 15, 1999, to claim their refunds for the 1995 tax year. The taxpayers met this deadline, and the district court erred in affirming the decision of the Tax Commissioner. Accordingly, we reverse, and remand with directions that the district court enter a judgment reversing the decision of the Tax Commissioner.

REVERSED AND REMANDED WITH DIRECTIONS.